# FOWLER *v.* McBERTY.

PATENT; INTERFERENCE; PRIORITY; PRELIMINARY STATEMENTS; DILIGENCE.

1. According to its long and well settled practice, this court will not overrule the concurrent findings of the three Patent Office tribunals, that certain evidence of one of the parties to an interference proves a disclosure.

2. It is a suspicious circumstance when a party to an interference, after seeing that his adversary's dates, set out in his preliminary statement, overcome his, seeks to prove earlier dates than those set out in his own preliminary statement.

3. When the Patent Office has refused to allow a party to an interference to file an amended preliminary statement, any attempt by such party to prove dates earlier than those set out in his preliminary statement is contrary to the rules of the Patent Office and to the general rules applicable to pleading in courts of law; and such testimony will be disregarded.

4. By due diligence in reduction to practice is meant reasonable diligence; and where a party to an interference has taken eleven months to accomplish a reduction to practice he cannot be heard to say that his adversary, who has taken only eight months, is guilty of laches.

No. 332. Patent Appeals. Submitted January 11, 1906. Decided February 6, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Charles A. Brown* and *Mr. H. A. Seymour* filed a brief on behalf of the appellant.

*Mr. George P. Barker* and *Mr. De Witt C. Tanner* for the appellee.

Mr. Justice Duell delivered the opinion of the Court:

This is an appeal by Samuel B. Fowler from a decision of the Commissioner of Patents awarding priority of invention to Frank R. McBerty.

The invention relates to telephone systems, and is one of a series in which various parties were originally involved, and in which various features of the original invention were set forth in the various issues of the interferences.

Of the four parties McBerty was the senior and Fowler the junior. The intermediate parties, Dyson and Boyce, took no testimony, and both, being restricted to their record dates, could not prevail; and therefore the contest has been between Fowler and McBerty.

The subject-matter of this controversy is limited to which of the two is entitled to an award of priority of invention of the following issue:

"1. In a telephone central exchange system, the combination with the line relay having front and back armature contacts; a supervisory signal associated with a switch cord and a switch plug thereof; and a local circuit containing said signal; of a resistance device associated with said local circuit to govern the strength of current therein, and thereby to determine the display or nondisplay of said signal; and a short circuit or shunt round said resistance device leading through the back armature contacts of said line relay, and adapted to be closed when said relay is unexcited, and opened when the same is excited, whereby the display of said supervisory signal is made dependent upon the attraction or retraction of the armature of said line relay.

"2. The combination of a normally open signal circuit, a normally closed shunt in said circuit, means in said circuit for supplying current, a normally open line circuit including said source of current, and a relay included in said line cir-

cuit and adapted, when energized, to open said shunt when the signal circuit is closed, so as to prevent the display of said signal, said relay, when de-energized, being adapted to close said shunt, so as to cause the display of said signal.

"3. The combination of a subscriber's line, a subscriber's switch, a line relay, a suitable source of current for supplying current to the line through said relay, a normally open circuit including said source of current, a supervisory signal in said open circuit, a suitable resistance in said circuit, and a normally closed shunt in said normally open circuit extending around said resistance, said shunt being controlled by said line relay, whereby the closing of said subscriber's switch opens said shunt, so as to prevent the display of said supervisory signal when the normally open circuit is closed, and whereby the opening of said subscriber's switch operates to close said shunt, so as to cause a display of said supervisory signal when the said normally open circuit is closed."

In further explanation we quote from the decision of the Examiner of Interferences. He says: "The invention at issue relates to telephone exchange systems employing small incandescent lamps as signals. In a well-known form, when the subscriber takes the receiver from its hook to initiate a call, a local circuit containing a relay is closed, which relay attracts its armature and thereby closes a circuit containing a small incandescent lamp. The glowing of this signal lamp indicates at the exchange that a connection is desired. A second lamp, the supervisory signal, is included in a shunt circuit about the line lamp. This shunt circuit is normally open, but, when closed by central making the desired connection, the current is not sufficient to illumine both lamps, and hence the illumination of the line signal lamp ceases and the supervisory lamp remains dark. When, at the end of the conversation, the subscriber replaces his receiver on its hook, the line relay becoming de-energized allows its armature to fall back, and thereby breaks the circuit containing the line lamp. Sufficient current then flows through the supervisory lamp to cause its illumination, and the glowing of the lamp then indicates that the conversation is at

an end. In the above-described system there is a slight increase of the current in the supervisory lamp when a subscriber hangs up his receiver, this increase being due merely to the opening of the branch containing the line signal. The novel feature of the issue of this interference consists in still further increasing the current flowing through the supervisory lamp by shunting a resistance out, or diminishing the resistance of the circuit of said lamp."

All of the Patent Office tribunals have agreed in according to McBerty a conception of the invention in controversy as early as May 29, 1901. This is based upon the "Wallace sketch" and test, and the testimony relating to them. While there was no oral argument for Fowler, we have carefully read the voluminous brief filed on his behalf. Nearly twenty pages of this brief are taken up with an interesting consideration of this Wallace sketch and test. We do not think that the argument proves that the sketch and test, and the testimony relating thereto, fail to disclose the subject-matter of the issues of this interference. In our opinion it does disclose the invention. We would in no event be justified in overruling the finding of the three Patent Office tribunals that the sketch, the test, and testimony in reference to them, prove a disclosure. Such a ruling would be contrary to the long and now well settled practice of this court. It is not necessary to a decision of the controversy that we should pass upon the question whether the tests made by Wallace constituted a reduction to practice as insisted by counsel for McBerty. Giving Mr. McBerty a conception and disclosure as of May 29, 1901, and a constructive reduction to practice on January 24, 1902, Fowler's testimony has been examined to determine whether he has overcome these dates.

There is much in Fowler's case to warrant the criticisms that have been passed upon it. It is a suspicious circumstance when a party to an interference, after seeing that his adversary's dates, set out in his preliminary statement, overcome his, seeks to put back his own dates as set out in his preliminary statement. When the Patent Office has refused to allow him to file an amended statement any attempt to prove the earlier

dates is contrary to the rules of the Patent Office, and to the general rules applicable to pleading in courts of law. Such testimony must be disregarded. Fowler pursued this course and naturally even his testimony, which is within the allegations of his preliminary statement, is very closely scrutinized. Under all the circumstances we do not see that any earlier date of conception and disclosure can be given Fowler than that of August 12, 1901, which is the date of his "exhibit drawing No. 2." As stated by the Examiners-in-Chief, that is "the first and only documentary or physical evidence of the apparatuses devised by Fowler." The witnesses called to corroborate the alleged earlier disclosures and acts done by Fowler are either not familiar with the system in question, or not electrical engineers, or do not testify clearly upon the questions inquired of. The testimony offered on behalf of Fowler fails to convince us beyond a reasonable doubt that he ever reduced the invention to practice prior to filing his application for his patent. We can only give him the benefit of a constructive reduction to practice as of July 18, 1902. He was therefore the last to conceive and disclose, and the last to reduce to practice. It would serve no good purpose to set forth in detail the proved facts, nor to specifically point out the weakness in Fowler's chain of proof. The Examiner of Interferences has elaborated all this. There is nothing in this case out of the ordinary to warrant us in reversing the concurrent decisions of the Patent Office on questions of fact.

The question of McBerty's alleged laches is not important. Under the findings of fact he was not required to be diligent, if at all, until Fowler's disclosure of August, 1901. By January 24, 1902, he had filed his application for patent. Due diligence is reasonable diligence. Had Fowler, after his conception and disclosure in August, and before McBerty had constructively reduced to practice, proceeded to and obtained a reduction to practice, then Fowler might urge this point with more force. McBerty, if we are correct in our findings of fact, took about eight months after disclosure to reduce to practice. Fowler took eleven months. The many cases cited by appellant in his brief upon the question of an inventor with-

holding his invention from the public and a want of diligence are not, in view of the facts of the present case, applicable thereto.

The Commissioner of Patents rightfully awarded priority of invention to the senior party, Frank R. McBerty, and accordingly we affirm his decision.

The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents as required by law.                                    *Affirmed.*